In the Matter of T.R.W. III, a Deprived Child.

No. 62407.

Supreme Court of Oklahoma.

Nov. 25, 1985.

Rehearing Denied July 8, 1986.

Tom M. Cummings, Oklahoma City, for appellant Father.

William R. McKinney, Asst. Public Defender, Oklahoma City, for the Child.

Robert H. Macy, Dist. Atty., Rebecca L. McNeese, Asst. Dist. Atty., Oklahoma City, for the State.

LAVENDER, Justice:

The natural mother of T.R.W. III (Tommy) died approximately two years after his birth. One year after the death of his mother, Tommy's father remarried. Tommy's new stepmother also had a son three months younger than Tommy.

On January 27, 1983, less than four months following the remarriage of his father, Tommy was admitted to Baptist Hospital suffering from an acute subdural hematoma in the left temporal region of his brain. X-rays taken at this time revealed a skull fracture in the right posterior area of the skull. No report of this incident was submitted to Child Welfare authorities as the physicians involved felt that they could not state medically that the cause of the injury was child abuse. However, Tommy's pediatrician and the social worker at Baptist Hospital referred Tommy's family to family counseling out of a concern that the family situation presented a risk of harm to Tommy.

On May 7, 1983, Tommy was again admitted to Baptist Hospital. This time he was in coma. The diagnosis was entered as subarachnoid bleeding and general brain dysfunction. Additionally, Tommy had bruises over much of his body.

The parental rights of the stepmother have subsequently been terminated upon her stipulation that she had abused Tommy. The present action was brought upon the State's petition to have Tommy adjudged deprived as to his father and to terminate his father's parental rights on the ground that the father had known of the abuse and had failed to protect Tommy from that abuse.

A jury verdict found Tommy to be deprived as to his father and the trial court entered an order adjudicating Tommy as deprived, declaring Tommy a ward of the court and placing his custody with his maternal grandparents. On further motion to terminate the father's parental rights, the trial court reviewed the record in the jury proceeding and entered an order terminating those rights. The father has brought a timely appeal from both orders.

## I.

The initial argument presented by appellant father concerns the application of 12 O.S.1981 § 575.1,[1] to cases involving the adjudication of a child's status as neglected or deprived, or in cases involving the termination of parental rights. The trial court in the present case allowed the State, the appellant father and the representative of the child to each exercise three peremptory jury challenges in the deprived action. Appellant father asserts on appeal that our holding in *Thompson v. Presbyterian Hospital, Inc.*[2] requires reversal.

In *Thompson* we stated,[3] in interpreting 12 O.S.1981 § 575.1:

Prejudice to the plaintiff will be deemed to have occurred when any additional peremptory challenge is allowed to a defendant who fails to show the factum of a "serious dispute" with one or more co-defendants in the case. The decision to grant additional challenges cannot be viewed as a matter of unregulated judicial discretion. Unless the record supports the presence of a serious dispute, prejudice will be presumed and the judgment will be reversed for unwarranted allowance of supernumerary challenges.

The Court of Appeals, Division I, on initial consideration of this case, agreed with appellant on this point, and ordered reversal of the trial court's orders. All parties to this case subsequently petitioned this Court for writ of certiorari. We have previously granted the requested writ.

In *Thompson* this Court recognized that the intent of 12 O.S.1981 § 575.1, was to extend three peremptory challenges to each side of the lawsuit.[4] We, however, as reflected in the previously quoted passage, limited the grant of such additional challenges to co-defendants in a case to situations in which a showing was made that the various interests of the defendants were

---

1. Which provides:

   Notwithstanding other methods authorized by law, the trial judge may direct in his discretion that a jury in a civil case be selected in the following manner:

   (a) if the case be triable to a twelve-man jury, eighteen prospective jurors shall be called and seated in the box and then examined on voir dire; when eighteen such prospective jurors have been passed for cause, each side of the lawsuit shall exercise its peremptory challenges out of the hearing of the jury by alternately striking three names from the list of those so passed for cause, and the remaining twelve persons shall be sworn to try the case;

   (b) if the case be triable to a six-man jury, twelve prospective jurors shall be called and seated in the box and then examined on voir dire; when twelve such prospective jurors have been passed for cause, each side of the lawsuit shall exercise its peremptory challenges out of the hearing of the jury by alternately striking three names from the list of those so passed for cause, and the remaining six persons shall be sworn to try the case.

   If there be more than one defendant in the case, and the trial judge determines on motion that there is a serious conflict of interest between them, he may, in his discretion, allow each defendant to strike three names from the list of jurors seated and passed for cause. In such case he shall appropriately increase the number of jurors initially called and seated in the box for voir dire examination.

2. 652 P.2d 260 (Okla.1982).

3. 652 P.2d at 268.

4. 652 P.2d at 266.

such as to constitute them as separate "sides" of the lawsuit.

In child welfare cases we have explicitly recognized the three-sided nature of the proceedings. In the case of *In re T.H.L.,*[5] this Court stated:

> The purpose of a termination proceeding is to sever the parental bond. The contest affects three distinct interests: (a) a parental claim to the child, (b) the state's responsibility to afford protection for underage citizenry and (c) the child's claim to a wholesome milieu free from harm of abuse and neglect. The interest of each party in this triology must be carefully weighed. The State's duty to the children within its jurisdiction must be balanced against the parents' natural and fundamental interest in their custody and control. A parent may be deprived of this fundamental right if the court should determine that the child is "deprived" and that severance of the parent-child relationship should be effected.
>
> The child's best interest is presumably served by leaving him in the custody of his natural parents only if this can be done with a reasonable assurance that no abuse or neglect would follow.
>
> (Footnotes omitted)

Previously, in the case of *In re T.M.H.,*[6] we recognized that the potential three way conflict in termination cases required that the child must always have independent counsel in termination proceedings.

██ Since we have explicitly acknowledged such child welfare cases to be three-sided in nature, applying the interpretation of 12 O.S.1981 § 575.1, established in *Thompson,* each of the three sides of the lawsuit were properly entitled to three peremptory jury challenges in the present case. As the Court of Appeals' opinion in this case was founded entirely on a con-

trary finding, it is vacated in its entirety, and we go on to address the other points of error raised by appellant father in his appeal.

## II.

In his second argument on appeal, appellant father argues that the trial court erred in failing to sustain his demurrer to the State's evidence and in failing to direct a verdict in favor of appellant father at the end of the trial. Additionally, appellant argues that the verdict and judgment are not supported by the evidence.

We stated the standard to be applied in reviewing such a challenge in *Oklahoma Transportation Co. v. Claiborn,*[7] as being:

> In passing upon alleged error in overruling defendant's demurrer to plaintiff's evidence and request for directed verdict, the evidence will be construed in the light most favorable to plaintiff and where there is any evidence or reasonable inferences from the circumstances reasonably tending to establish a cause of action or to sustain a jury's verdict and a judgment based thereon, such judgment will be sustained unless shown to be contrary to law.

And, in *Hames v. Anderson,*[8] we stated:

> In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon. ...

The basis of appellant father's argument is that the evidence presented by the State failed to establish that appellant had actual knowledge of the abuse of Tommy by his stepmother. Without such actual knowledge of ongoing abuse, appellant argues,

---

**5.** 636 P.2d 330, 332 (Okla.1981).

**6.** 613 P.2d 468 (Okla.1980).

**7.** 434 P.2d 299 (Okla.1967). And see also *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121, 130 (Okla.1984), where we stated:

> Because appellants sought to elicit evidence in support of their defense after they demurred to appellee's evidence, they waived any assignment of error with regard to the trial court's overruling their demurrer.

**8.** 571 P.2d 831, 833 (Okla.1977).

he could not have had a duty to protect Tommy from this abuse.

Regardless of appellant's characterization of the evidence in the case, a thorough reading of the trial record reveals that this question was in dispute under the evidence presented to the jury. The substance of appellant's case, as presented to the jury, was twofold. First, appellant's questioning of his own and the State's witnesses sought to elicit the absence of actual notice of any abuse of Tommy. Second, appellant sought to question, by presentation of his own witnesses, whether in fact Tommy had been the subject of abuse.

■ The State's evidence, on the other hand, sought to establish that both hospitalizations of Tommy had been the result of child abuse and that appellant father had notice that the first incident was the result of actions by Tommy's stepmother. The State also presented evidence that between the first and second incidents Tommy had exhibited fear of his stepmother which was noticeable to third parties. Most importantly, expert witnesses testifying for the State testified that upon the May 7th admission Tommy was substantially covered with bruises ranging in age from two to five days, that this bruising was of such a nature as to classify Tommy as a battered child, and that this bruising should have been readily apparent to one observing Tommy.

We find the evidence presented, though open to various interpretations, to be sufficient to support the trial court's rulings on appellant's demurrer to the evidence and motion for directed verdict, as well as sufficient to support the jury's verdict and the judgment rendered thereon.

### III.

Appellant's next proposition of error concerns certain lines of questioning by the State which appellant contends were irrelevant and unfairly prejudiced him before the jury. These questions were directed at either appellant or the stepmother when they were called on direct examination by the State.

■ The State's questioning, to which appellant's objections were overruled, may be divided into two categories. The first category contains questions directed to the stepmother concerning her treatment of Tommy and her own son and regarding the stipulation she had entered admitting her abuse of Tommy. Since the precise issue to be decided below was whether appellant had knowledge of abuse of Tommy by the stepmother, it hardly seems logical to consider questions regarding the treatment of Tommy by the stepmother as irrelevant.

■ The second category consists of questions asked of both appellant and the stepmother concerning their relationship after the May 7th incident. Although it appears that at the time the State first sought to elicit this testimony the nature of this relationship was not at issue, it became apparent at a later point in the trial that appellant was attempting to make an issue of this relationship. One of the points which appellant sought to make in this trial was that his total rejection and subsequent divorce of the stepmother after the May 7th hospitalization supported his claim that he had been totally unaware of her abuse of Tommy. At that point the nature of this continuing relationship became relevant in the trial. Under these circumstances we can see no prejudice to appellant accruing from the early questioning of the stepmother. Following appellant's cross-examination of the stepmother the issue of the nature of the relationship had become clearly relevant. Absent such prejudice to appellant the complained of questioning presents no grounds for reversal.[9]

---

9. See *Brownell v. Moorehead,* 65 Okla. 218, 165 P. 408 (1917), where we stated in Court's syllabus:

> The admission of evidence, which is competent to impeach a witness, prior to any proper foundation therefor being laid, will not be held to constitute prejudicial error, where afterward, during the course of the trial, a proper foundation therefor is laid.

and see *Thompson v. Inman,* 482 P.2d 927 (Okla.1971).

■ Appellant also complains about one question which was asked him regarding his financial status. Appellant objected to this question and that objection was sustained. We find no error in the court's ruling, and, as the information sought was prevented from being brought before the jury, we find no prejudice to appellant.

## IV.

The fourth proposition of error presented by appellant is an argument that the trial court erred in failing to grant a mistrial upon his motion following the State's elicitation of opinion testimony from a witness to the effect that the witness thought the stepmother had attempted to suffocate Tommy with a garbage bag. The trial court denied the mistrial but did admonish the jury to disregard the testimony as being totally irrelevant to the question of whether appellant had knowledge of the abuse of Tommy.

■ In view of the fact that this evidence only went to the question of the stepmother's abuse, a fact established by stipulation, any harm to appellant will be deemed to have been removed by the court's admonition to the jury.[10]

Additionally, appellant mentions in passing in this proposition of error several other incidents in the trial court's handling of this case which he alleges to be erroneous, including a contact between a party interested in the case and the jury and the court's allocation of time in closing arguments. We have examined these incidents and find no error. Regarding the jury contact, the trial court examined both the jury and the party having contact and established that such contact was innocuous in nature and that the jury took no notice of the matter. The allotment of time for closing arguments in the case we find to comport with our analysis of the three-sided nature of the case as set forth in Part I of this opinion.

## V.

Appellant's fifth and sixth propositions of error shall be addressed together. The fifth proposition alleges that there was no specific finding of failure to protect Tommy from abuse in the proceeding leading to the adjudication of Tommy as deprived on which to base the subsequent termination of appellant's parental rights under 10 O.S. Supp.1983 § 1130(A)(5)(a). The sixth proposition is that the evidence to support such a finding, if such a finding was made, was not clear and convincing.

The basis of appellant's fifth proposition is his argument that, under the instructions given, the jury's verdict finding Tommy to be deprived may not be interpreted to embody a specific finding that appellant knew of the abuse and failed to protect. In support of this argument appellant cites two of the trial court's instructions to the jury; one of which defines the terms "deprived child" and "proper parental care and guardianship." Appellant then argues that under these instructions the jury could have found Tommy deprived on grounds other than appellant's knowledge of abuse and failure to protect.

■ Appellant's argument ignores several fundamental principles. In reviewing the propriety of instructions they are to be viewed as a whole rather than separately.[11] In this regard the trial court's instruction number 8 provided:

You are further instructed that no abuse by [the stepmother] is to be imputed to [appellant father]. The only issue for you to determine in the case at bar is whether [appellant father] knew of abuse to his son, [Tommy], and failed to protect him. Unless you find that [appellant father] knew of the abuse and failed to protect his son from that abuse, then you shall find for the Respondent, [appellant father], that the said minor child, [Tommy], is not a deprived child as to the Respondent.

10. See *Austin v. King,* 404 P.2d 1009 (Okla. 1965).

11. See *Karriman v. Orthopedic Clinic,* 516 P.2d 534 (Okla.1973).

In this regard a presumption exists that jurors do their duty in following proper instructions.[12] As to the assertion that the jury could have adjudged Tommy deprived on other grounds, we consider instruction number 8 to clearly indicate otherwise. Any inconsistency arising out of the offering of definitions in the instructions cited by appellant must be deemed to have been perceived by the jury and disregarded in reaching their verdict.[13]

■ Indulging in the presumption that the jury properly followed the instructions as a whole we agree with the trial court that the verdict finding Tommy to be deprived necessarily embodied a finding that appellant father knew of the abuse and failed to protect his son from that abuse. The statute cited by appellant, 10 O.S.Supp. 1983 § 1130(A)(5)(a), provides:

A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

. . . .

5. A finding made in a criminal action or specifically so found in a juvenile deprived action either that:

(a) a parent has physically or sexually abused the child or failed to protect the child from physical or sexual abuse that is heinous or shocking to the court, or

. . . .

Our review of the evidence in this case supports the view that the abuse inflicted on Tommy was both heinous and shocking.[14]

Appellant's final proposition of error presents a second rehash of the evidence presented to the trial court. Appellant argues that this evidence does not rise to the level of clear and convincing required to effect a termination of his parental rights.

■ As set forth in Part II of this opinion we have examined the evidence before the trial court and have determined that the evidence supports the jury verdict in the deprived action. That review has also established that the evidence presented rises to the level of clearly and convincingly supporting a finding that abuse of a heinous and shocking nature was inflicted on appellant's son and that the nature of this abuse was such that appellant had notice of its infliction and failed to protect his son.[15]

### VI.

Having carefully reviewed the full record in this case, we find no error necessitating reversal of the orders below. The propositions of error presented by appellant have been examined and found to be without merit. Accordingly, the opinion of the

12. *Hankins v. Brinkman,* 429 P.2d 985 (Okla. 1967).

13. *Lee v. Darden,* 421 P.2d 845 (Okla.1966).

14. Appellant has additionally presented the argument that this Court's pronouncement in *In re C.G.,* 637 P.2d 66 (Okla.1981), requires that under all circumstances a parent be given notice and opportunity to conform to norms set by the court before termination of parental rights may be terminated. *In re C.G.* may be so read in proceedings brought under 10 O.S.1981 § 1130(A)(3). However, subsequent to *C.G.,* this Court recognized that a termination may be effected on a finding of one incident of abuse. *In re Jerry L.,* 662 P.2d 1372 (Okla.1983). Subsequent to *Jerry L.,* the Legislature has provided for the termination of parental rights on a finding of a single incident of abuse that is heinous or shocking. 10 O.S.Supp.1983 § 1130(A)(5).

15. We find the evidence presented through the various medical experts who had examined Tommy at the time of the May 7 hospitalization to overwhelmingly support this result. To summarize the testimony of these experts, Tommy was admitted at that time suffering from subarachnoid brain hemorrhages and general brain dysfunction, and bruising over much of his body. The bruising was present on his forehead, trunk and extremeties, and around his rectum. Tommy, as well, had retinal hemorrhaging. All of these conditions were associated with trauma. The bruising on his forehead was associated with multiple blows. Also the medical testimony established that these various bruises had been inflicted over a course of four to seven days prior to the May 7 hospitalization. The culmination of this abuse was Tommy's state of general brain dysfunction accompanied by blindness, conditions the physicians concluded would be permanent.

Court of Appeals purporting to vacate the orders of the trial court is VACATED, and the orders of the trial court are AFFIRMED. Appellant's motion to tax costs in this case is denied.

DOOLIN, V.C.J., and HODGES, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., concurring specially.

OPALA, J., concurring in part and dissenting from the judgment.

ALMA WILSON, Justice, concurring specially.

In my opinion the record in this case supports a termination of parental rights. I am compelled, however, to stress that the rights of parents can *not* be considered paramount to the rights of children to nurture, care and protection. The parental bond is not unseverable if unaccompanied by assumption of the responsibility for the child.

I firmly believe that the failure to terminate parental rights under the circumstances relfected by the record here, would be to judicially condone the abuse of a defenseless child and sanction parental abdication, whether by omission or commission, of the accompanying responsibility to protect a child from harm.

OPALA, Justice, concurring in part and dissenting from the judgment.

I concur in Parts I, II and III; I concur in result in Part IV; I concur in part and dissent in part as to Part V; and I dissent from the judgment in Part VI. The 1983 amendment of 10 O.S.1981 § 1130(A)(5), which became effective thirty-one days *after the Act was approved on June 23, 1983* (Okl.Sess.Laws 1983, Ch. 291, pgs. 893–894), does not govern the offending parental demeanor upon which the State must rely herein for severance of paternal bond. This is so because the misconduct which forms a basis for parental termination sought to be effected in this case *occurred before the effective date of that amendment* (in January and May of 1983). A

statute that clearly affects substantive rights may not operate retrospectively. *Thomas v. Cumberland Operating Co.*, Okl., 569 P.2d 974, 976 [1977]. Under the terms of 10 O.S.1981 § 1130(A)(5), the statute which governs the proceeding before us today, a showing of physical child abuse *subsequent* to the one which had been specifically found in a prior proceeding—criminal or juvenile—was a *sine qua non* of termination. See, *Matter of Jerry L.*, Okl., 662 P.2d 1372, 1374 [1983] (Simms, V.C.J., dissenting).