**In the Matter of S.C., a child under 18 years of age.**

**STATE of Oklahoma, Appellee,**

v.

**Norman HOPSON, Sr., Appellant.**

**No. 77802.**

Court of Appeals of Oklahoma,
Division No. 1.

April 7, 1992.

Randal D. Morley, Tulsa, for appellant.

Michael S. Ashworth, Asst. Dist. Atty., Tulsa, for appellee.

BAILEY, Judge:

Appellant Norman Hopson, Sr., (Father) seeks review of judgment entered on jury

verdict terminating his parental rights in and to his daughter S.C. (Child), previously adjudicated deprived, on motion of Appellee State of Oklahoma (State). Herein, Father asserts (1) error in admission/exclusion of certain evidence, (2) error in instruction of the jury, (3) error in denying Father's motions to dismiss and for directed verdict, and (4) lack of adequate evidentiary support for the jury verdict.

On or about August 29, 1986, State commenced the instant action seeking adjudication of S.C. (Child) as deprived based on Father and Child's natural mother's inability to care for Child.[1] Thereafter, on March 24, 1987, apparently with consent of Father (represented by counsel), the Trial court entered its order adjudicating Child's deprived status. The Trial Court also imposed certain requirements, i.e., standards of conduct, for Father, particularly directing Father to complete parenting classes, to exercise visitation with Child, to obtain individual counseling/therapy dealing with the issues that lead to Child's deprived status, and to obtain a psychological assessment, such requirements to be fulfilled during Father's incarceration in prison, if available, or after Father's release. The record also reflects that Father underwent numerous transfers from one DOC facility to another during his incarceration.[2]

In April, 1991, State filed its motion to terminate Father's parental rights while Father remained incarcerated, alleging Father's failure to adhere to the judicially imposed standards of conduct, i.e., to obtain the directed classes and treatment. State introduced evidence tending to show Father's failure to comply with the judicially imposed requirements although such services were available. Father adduced evidence tending to show that DHS case workers contributed to Father's failure to comply with the judicially imposed standards.[3] The Trial Court instructed the jury, refusing to give Father's requested instruction concerning effect of State's contribution to the situation. The jury subsequently returned its verdict finding Father had failed to comply with the judicial standards of conduct and terminated Father's parental rights. Father filed motion for judgment notwithstanding the verdict which was denied by the Trial Court, and Father now appeals.

1. The record shows Father to have been incarcerated in the Oklahoma Department of Corrections at all times pertinent hereto, and the responsibility for caring for Child cast primarily on natural mother. State's deprived petition also assigned primary responsibility for Child's deprived status on Child's natural mother, although the Court adjudicated Child deprived as to both parents. Natural mother's parental rights have subsequently, and separately, also been terminated.

2. It appears that at some detention sites, DOC offered relevant treatment programs, while at others, DOC did not. It further appears that at some of the sites where relevant programs were available, the waiting list for admission was long.

3. For example, although the DHS case worker assigned to Father testified Father contacted her approximately twenty times, she also testified she failed to encourage Father to maintain such contacts, that she failed to attempt to contact Father after his transfer to Tulsa where Child resided, that she failed to attempt to verify Father's statement regarding payment of child support, that she failed to ascertain and/or inform Father if Father was allowed to visit Child during Father's incarceration in certain institutions, and that she failed to ascertain and/or inform Father if Father was allowed to contact worker via collect telephone call. The case worker also testified as to a lack of relationship between Child and Father notwithstanding a previous finding that Child had bonded with Father, that she failed to reply to Father's letters because of her "case load number and no time to do that," and that she failed to advise Father that she would transport Child to see Father. The case worker admitted having recommended Father be allowed to continue visitation with Child, but that the specific DOC case worker assigned to Father at that time failed to respond or take any action on these recommendations.

Another witness of DHS testified Father communicated to her the problems Father faced in attempting to comply with certain of the court imposed standards of conduct while incarcerated; e.g., at one point, Father informed Child's Court Appointed Special Advocate worker that Father had been unable to obtain passes to go "places that he needed to go; ... that he had trouble getting passes from his case manager." We further note Father's attorney personally contacted those officials responsible for facilitating Father's compliance with the judicial standards of conduct only to be met with silence.

**202**

■  Having reviewed the evidence adduced at trial, we first note that much, if not most, of State's case relates to the issue of whether Father was a "good father." That is, State devoted the vast majority of its case attempting to show Child would be "better off" with a different parent. While not denigrating the nobility of this gesture, this Court—as has the Supreme Court—imposes a different standard in cases of termination of parental rights. In that regard, although the general tenor and intent of juvenile code is to serve best interests of child,[4] a parent has a fundamental, constitutionally protected interest in the continuity of the legal bond with his or her child.[5] With these general precepts in mind, we turn our attention to the merits of Father's appeal.

■  Father challenges the Trial Court's failure to instruct the jury that "if you find that the fact situation was contributed to by [DHS] agent(s) or worker(s) to whom is entrusted the duty to help salvage the family relationship, then you must find in favor of [Father]."[6] On this issue, we first recognize extant Oklahoma law imposing a duty on the Trial Court to instruct upon the decisive issues of the case as supported by the pleadings and evidence introduced.[7] The tests on review of instructions given or refused are whether there is a probability that the jurors were misled and thereby reached a different conclusion than they would have reached but for the questioned instruction, or there was excluded from consideration a proper issue of the case.[8]

In the instant case, we find some evidence showing that the State officials assigned to Father's case to assist in salvaging and preserving the Father/Child relationship may indeed have instead contributed to the severance thereof. Under these circumstances, we believe the Trial Court erred in failing to instruct on the issue raised by the evidence,[9] that is the effect of State's contribution to the disintegration of the parent/child relationship.[10] We therefore conclude the matter should be remanded for new trial on proper instruction.[11]

Judgment on jury verdict terminating Father's parental rights is therefore REVERSED, and the cause REMANDED FOR NEW TRIAL.

GARRETT, P.J., and ADAMS, J., concur.

---

4. *Matter of Meekins,* 554 P.2d 872 (Okl.App. 1976).

5. *Matter of Delaney,* 617 P.2d 886 (Okl.1980).

6. *Matter of Christopher H.,* 577 P.2d 1292 (Okl. 1978).

7. See, e.g., *Bradley Chevrolet, Inc. v. Goodson,* 450 P.2d 500 1969 (Okl.1976); *Vogel v. Rushing,* 202 Okla. 277, 212 P.2d 665 (1949).

8. See, e.g., *Ankney v. Hall,* 764 P.2d 153 (Okla.1988); *Woodall v. Chandler Material Co.,* 716 P.2d 652, 654 (Okl.1986); *VanWart v. Cook,* 557 P.2d 1161 (Okl.App.1976).

9. *Ankney,* 764 P.2d at 156 (exclusion of proper issue).

10. *Matter of Christopher H.,* 577 P.2d at 1292.

11. Having so held we deem it unnecessary to address Father's remaining allegations of error.