1998 OK CIV APP 76

**In the Matter of L.A.Y., a child under the age of eighteen,**

**Jennifer YOST, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. 90497.**

Court of Civil Appeals of Oklahoma, Division No. 1.

May 8, 1998.

Larry Monard, Oklahoma City, for Appellant.

Connie S. Pope, Asst. District Attorney, Guthrie, for Appellee.

James D. Bennett, Enid, for Child, L.A.Y.

**OPINION**

CARL B. JONES, Vice Chief Judge.

¶ 1 The mother of L.A.Y., a three-year old boy, appeals a judgment on jury verdict terminating her parental rights. L.A.Y. had been in DHS custody since he was 2 1/2 months old. At an adjudication hearing in January, 1996, mother stipulated to allegations in the State's petition and L.A.Y. was adjudicated "deprived". The dispositional order with service plan was also entered at

that hearing. In July, 1996, an amended service plan was accepted and adopted by the trial court. The plan set forth several conditions or standards of conduct with which mother was ordered to comply.[1] Mother's failure to comply with the plan, however, led the state seven months later, in February, 1997, to file its Application to Terminate her Parental Rights. Jury trial was held on October 21, 1997, resulting in a verdict that mother's parental rights be terminated.

¶2 Mother received a drug and alcohol assessment which found her to be dependent on drugs in December, 1995. A later assessment was done, in March, 1997, which showed that her dependency had progressed or gotten worse.

¶3 The Logan County Youth and Family Services evening treatment program was described as an intensive twelve week out-patient program. Despite being given more than twice the normally allowed absences, mother quit going and did not complete the program. Mother attempted the program again, but after having five absences in the first three weeks she was dropped from the program.

¶4 The service plan also required parenting classes which mother began at the Logan County Youth and Family Services. Out of the minimum of twelve classes required for successful completion, mother attended seven. She just quit attending without explanation.

¶5 The visitation she was allowed with her child was only infrequently exercised. Because of mother's drug use an additional requirement was imposed by DHS and the court that she show a negative drug screening test before she would be permitted visitation with the minor child. Mother's first DHS child welfare specialist, Mr. Shipman, testified that he talked with mother 40 or 50 times about getting her drug problem under control and that she clearly understood that drug use was the root of her problems. Mr. Shipman was succeeded by Mr. Southerland in February, 1997. Mr. Southerland testified that since he took over the case, mother had not submitted to any drug testing nor had she attempted to exercise any visitation with the child. They had also had a very difficult time locating her.

¶6 Pursuant to 10 O.S. Supp.1995 § 7006-1.1, in order to terminate parental rights, the state must show, by clear and convincing evidence, that (a) the child is deprived; (b) such condition is caused or contributed to by acts or omissions of his parent; and, (c) termination of parental rights is in the best interests of the child. The burden of evidence or persuasion then shifts to the parent to show by clear weight of the evidence that conditions have changed and have been corrected since the adjudication of the deprived child. *Matter of C.G.*, 1981 OK 131, 637 P.2d 66, 71.

¶7 Mother first contends the trial court erred in instructing the jury that her parental rights could be terminated if proof of the statutory elements was "clear and convincing". She objected to this instruction and argues that the "clear and convincing" standard is a violation of the Fourteenth Amendment equal protection clause of the United States Constitution. The basis for this argument is that the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq., provides that termination of the parental rights of Indian parents is permitted only where "supported by evidence beyond a reasonable doubt" that continued custody by the parents is likely to result in serious damage to the child. 25 U.S.C. § 1912(f). Indian parents thus have greater protection against losing parental rights than non-Indians. The Equal

---

1. The service plan required that mother:
    (1) Receive a drug/alcohol assessment from a qualified drug/alcohol counselor to determine the extent of her addiction;
    (2) Attend and successfully complete the evening treatment program at the Logan County Youth and Family Services;
    (3) Attend infant parenting classes once a week for a period of twelve weeks to learn how to appropriately parent her infant child;
    (4) Have visitation with the child, L.A.Y., on a weekly basis with supervision by the Department of Human Services;
    (5) Submit to random urinalysis testing as directed by the Department of Human Services;
    (6) When she has tested negative for drugs and alcohol for six consecutive weeks and completed at least four sessions of parenting classes, the minor child shall be placed back into her care.

Protection Clause exists to assure that those persons similarly situated with respect to a governmental action should be treated similarly. *Smith v. State,* 1982 OK CR 77, 646 P.2d 1285, 1287. It "does not bar all distinctions between classes of individuals subject to governmental action, but simply assures that the classification made is neither arbitrary or capricious, and that it bears a rational relationship to a legitimate governmental interest.," *Id.,* at 1288. "The goal of the Indian Child Welfare Act is to protect Indian families against disruption, pursuant to a Congressional finding that an alarmingly high percentage of Indian families are broken up by unwarranted removal of Indian children from them and that 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children * * *.' 25 U.S.C. § 1901(3), (4)." *In the Matter of the Application of Angus,* 60 Or.App. 546, 655 P.2d 208, 213 (1982). *Angus* held that there was a rational basis between the fulfillment of Congress' unique guardianship obligation toward the Indians and the protection of the integrity of Indian families as provided in the Indian Child Welfare Act. *Id.*

¶ 8 There is a rational basis for the special protections set forth in the Indian Child Welfare Act. Therefore, the fact that state law provides less protection for non-Indians, such as Appellant here, is not a constitutional violation of the equal protection clause.

¶ 9 Mother next contends she was deprived of due process in that the state did not prove that she received a copy of the service plan, agreed to the service plan or that a hearing was held regarding the service plan. This contention is without merit. Court records reflect that mother and her attorney were present in court on January 17, 1996, when the service plan was first presented and adopted by the court. Further, when the amended service plan was ordered and adopted on July 3, 1996, mother and her attorney were again both present. The record is also replete with evidence that the DHS case workers and others counseled mother repeatedly on what she needed to do to regain custody of her child. Further,

mother never testified that she was unaware of the service plan or that she did not know what was being required of her to regain custody.

¶ 10 Mother's final proposition is that the trial court erred in failing to instruct the jury that her parental rights could not be terminated if the Department of Human Services had hindered her progress in complying with the service plan. She argues that by requiring her to submit a negative drug test as a condition for exercising visitation, DHS made it too difficult, or even impossible, for her to exercise that visitation. The trial court refused to give such an instruction, finding no action by DHS that thwarted mother's ability to comply with the plan. As mother's brief notes, it is the trial court's duty to instruct on the decisive issues of the case as supported by the pleadings and evidence. See, e.g., *Matter of S.C.,* 1992 OK CIV APP 40, 830 P.2d 200, 202.

¶ 11 The service plan was designed to assist mother in changing her lifestyle in order to become a responsible and competent parent. The goal of the plan was always reunification of mother and child. Considering the extent of mother's drug dependency and other irresponsible behavior, the plan was reasonable and was designed to accomplish its goal of reunification. It was specific in what it required, yet flexible to accommodate mother. DHS did not hinder mother's progress, rather, DHS gave mother ample time, opportunity, and assistance to comply with the plan and its reasonable requirements. The evidence simply did not support a jury instruction in effect blaming DHS for mother's lack of progress in complying with the service plan. This alleged error is also without merit.

¶ 12 In a jury trial, where there is competent evidence reasonably tending to support the verdict, the judgment based thereon will not be disturbed on appeal. *Matter of T.R.W.,* 1985 OK 99, 722 P.2d 1197, 1200. As competent evidence did support the verdict, and as legal errors are absent

herefrom, the judgment of the trial court must be affirmed.

¶13 AFFIRMED.

JOPLIN, P.J., and GARRETT, J., concur.