2001 OK CIV APP 27

**Chris ELMORE, Appellee,**

v.

**DOENGES BROTHERS FORD, INC., Appellant.**

**No. 93,241.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 15, 2000.

Rehearing Denied Oct. 2, 2000.

Certiorari Denied Feb. 12, 2001.

As Amended April 4, 2001.

Steven M. Harris, Doyle & Harris, Tulsa, OK, for Appellee.

M.E. McCollam, McCollam & Glassco, Tulsa, OK, for Appellant.

1. The title listed Plaintiff and/or Kelisha D. Fipps. However, Fipps is a not a party to this lawsuit.

*OPINION*

TAYLOR, J.

¶ 1 Defendant, Doenges Brothers Ford, Inc., appeals an order of the trial court denying its motion for new trial. The issues on appeal are (1) whether the verdict is sustained by competent evidence; (2) whether the trial court correctly denied Defendant's request for a remittitur; (3) whether the trial court properly instructed the jury; and (4) whether the trial court correctly awarded attorney fees to Plaintiff, Chris Elmore. Having reviewed the record and applicable law, we answer all four questions in the affirmative and affirm the order denying the motion for new trial.

¶ 2 Alex Belauste, one of Defendant's employees, placed a car (a Volkswagen Jetta) on consignment with Defendant. Belauste had purchased the car in Mexico and brought it to the United States. Plaintiff, another employee of Defendant, wished to buy the car. Because Plaintiff desired to finance the purchase through Ford Motor Credit, the sale of the car was accomplished through Defendant. On August 8, 1996, Belauste executed an "Assignment of Title by Registered Owner," which appeared on the reverse side of the official Certificate of Title issued by the State of Oklahoma. Belauste thereby transferred title to Defendant. On the same day, Defendant executed a "Re Assignment by Oklahoma Dealer," which also appeared on the reverse side of the official State of Oklahoma Certificate of Title. Defendant thereby re-assigned the title to Plaintiff.[1]

¶ 3 Sometime after the sale, the State determined that certain Environmental Protection Agency (EPA), Department of Transportation (DOT), and customs clearance documents were missing. Because of the absence of these documents, the State would not issue an official title to Plaintiff for the vehicle.

¶ 4 Due to the State's denial of Plaintiff's request for title, Plaintiff sued Defendant alleging breach of warranty of title. The suit proceeded to trial and a jury returned a

verdict in favor of Plaintiff in the amount of $25,000. Defendant filed a timely motion for new trial or for remittitur, which the trial court denied. The trial court granted Plaintiff's motion for attorney fees. Defendant appeals both of these rulings.

## STANDARD OF REVIEW

¶ 5 This appeal, as it relates to the jury verdict, originates from an order denying a motion for new trial or for remittitur. The standard of review of a trial court's decision denying a motion for new trial is clear: "A trial court is vested with broad legal discretion in granting or denying new trial, and unless it clearly appears that the trial court erred in some pure simple question of law or acted arbitrarily, its judgment will not be disturbed on appeal." *Dominion Bank of Middle Tenn. v. Masterson*, 1996 OK 99, ¶ 16, 928 P.2d 291, 294. As for the motion for a remittitur, a damage award will not be held excessive and subject to remittitur, unless the award appears to be grossly excessive or is the result of passion, prejudice, or improper sympathy. *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 40, 708 P.2d 1068, 1077.

¶ 6 Defendant also appeals the award of attorney fees, arguing that Plaintiff is not entitled to such an award. The issue of entitlement to an award of attorney fees presents a question of law. Questions of law are subject to the de novo standard of review. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶ 5, 895 P.2d 731, 733 (approved for publication by order of the Oklahoma Supreme Court). Under that standard, we claim plenary, independent and non-deferential authority to reexamine the trial court's legal rulings. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE VERDICT

¶ 7 Defendant first argues the verdict is not supported by sufficient evidence or is contrary to law. An appellate court determines the sufficiency of the evidence to sustain a verdict "in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it." *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287. Where there is any competent evidence tending to support the verdict, an appellate court will not disturb the verdict or a judgment based thereon. *Id.* An appellate court must accord "the greatest deference to the determination by the trier of fact." *Sides v. John Cordes, Inc.*, 1999 OK 36, ¶ 17, 981 P.2d 301, 307.

¶ 8 Defendant's main argument with regard to insufficiency of the evidence centers around the issue of damages. Defendant argues that Plaintiff "offered no evidence regarding the issue of damages; specifically the calculation required by instruction No. 17, the difference between the value of the car as accepted and the value the car would have had if it had been as warranted." Defendant also argues that the verdict is excessive.

¶ 9 The calculation of damages for breach of warranty of title is governed by 12A O.S. 1991 § 2–714, which provides in pertinent part as follows:

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered.

¶ 10 We disagree with Defendant's argument that Plaintiff failed to prove the differential in value between the car as accepted and as warranted. Plaintiff testified that he tried to sell the car, but, because title to the car was not in his name, he could not find a buyer for it. According to Plaintiff, no one would give him close to what he had paid for the car. Plaintiff further testified that the only interested parties he could find were in the salvage business, and they wanted to

give him $100 to $200.[2] This evidence supports a finding that the difference between the value of the car as accepted ($100 or $200) and the value the car would have had if it had been as warranted ($10,500) is $10,400 or $10,300.

¶ 11 Defendant attacks Plaintiff's evidence on the ground that it is based on the value of the car at the time of trial, not the value of the car at the time of acceptance as required by § 2–714. We agree that Plaintiff did testify in terms of the value at the time of trial. However, under the circumstances of this particular case, Plaintiff's testimony is still probative. The defect in the car is a defect in title—it was the same at the time of acceptance as it was at the time of trial. Therefore, evidence of the value of the car at the time of trial (salvage value according to Plaintiff) is equally probative of evidence of the value of the car at the time of acceptance (again, salvage value).

¶ 12 Defendant also argues the damages are excessive and should have been remitted. A jury verdict may be set aside as excessive or a remittitur may be granted only if it appears that "the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous, showing the jury to have been actuated by passion, partiality, prejudice or corruption." *Currens v. Hampton*, 1997 OK 58, ¶ 10, 939 P.2d 1138, 1141; *see also LeFlore*, 1985 OK 72, ¶ 40, 708 P.2d at 1077. "An appellate court may not substitute its judgment for that of the jury in its exercise as a fact-finding body; it must consider the evidence most favorable to the plaintiffs as establishing the facts concerning the excessiveness of the verdict." *Currens*, 1997 OK 58, ¶ 10, 939 P.2d at 1141.

¶ 13 We cannot say that, at first blush, the damages awarded by the jury in the instant case are unreasonable and outrageous. Again, we note Plaintiff presented evidence that the only potential buyers of the car with the title defect were from the salvage industry who were willing to pay approximately $10,300 less than Plaintiff had paid for the car. Furthermore, in addition to being entitled to the differential value, § 2–714 provides for consequential damages in a breach of warranty case. Consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." 12A O.S.1991 § 2–715. Plaintiff testified he was unable to purchase another car because he was still making payments on the Jetta. He further testified that loss of transportation, due to inability to drive the Jetta because of the title problems, caused him to be unemployed for approximately eight months. According to Plaintiff, his average salary was approximately $2,500 per month, resulting in a loss of income of approximately $20,000. Therefore, counting the differential in value of $10,300 and the lost income, Plaintiff presented evidence of damages of a minimum of $30,300. Thus, the jury's verdict of $25,000 was within the range of the evidence as to damages and we cannot say that it strikes this court as excessive.

¶ 14 Defendant maintains that Plaintiff is not entitled to consequential damages because he waived such damages under the Buyer's Agreement. Defendant argues the trial court erred in not instructing the jury regarding the affirmative defense of waiver. Initially we note that, with regard to the issue of waiver, Defendant merely stated in its motion for new trial that the "verdict was

2. We note that Defendant argues it presented evidence that Plaintiff could have sold the car at an auction in another state, even with the title defects. Disregarding the issue of whether Plaintiff should even be required to search for such an auction in the hopes of selling a car with significant title defects, we need not consider this evidence under the applicable standard of review. We consider the evidence and reasonable inferences tending to support the verdict and reject all evidence produced by the adverse party which conflicts with the supporting evidence and inferences. *Florafax Int'l, Inc. v. GTE Market Resources, Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287. Moreover, "[t]he effect and weight to be given conflicting or inconsistent testimony are questions of fact to be determined by the jury and not to be retried by the appellate courts where there is evidence to support the jury's determination." *Holley v. Shepard*, 1987 OK 92, ¶ 7, 744 P.2d 945, 947.

contrary to law in that the contractual provision agreed to by the Defendant waiving incidental and consequential damages was given no force or effect." This allegation borders on being so general as not to properly preserve for appeal the issue of failure to give the instruction regarding waiver. *See generally Federal Corp. v. Independent Sch. Dist. No. 13,* 1978 OK CIV APP 55, 606 P.2d 1141 (approved for publication by order of the Oklahoma Supreme Court); *Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, 681 P.2d 757.

¶ 15 Assuming that Defendant properly preserved this issue, we find that the trial court did not err in refusing to give the instruction. The buyer's agreement contained a disclaimer with the following language:

> *ALL VEHICLES:* WHETHER THE VEHICLE IS NEW, A DEMONSTRATOR OR USED: *UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT* MADE BY THE DEALER ON HIS OWN BEHALF, DEALER DISCLAIMS ALL WARRANTIES, WRITTEN, EXPRESS OR IMPLIED, INCLUDING ALL WARRANTIES ˎOF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND DEALER EXPRESSLY DISCLAIMS ANY LIABILITY TO PURCHASER, FOR ANY CONSEQUENTIAL DAMAGES, LOSS OF TIME OR INCONVENIENCE ARISING OUT OF THE PURCHASE OR OPERATION OF THE VEHICLE. (Emphasis added.)

Pursuant to the language emphasized above, Defendant's disclaimer was of no effect if Defendant furnished Plaintiff with a separate written warranty. The Certificate of Title through which Defendant attempted to pass title to Plaintiff expressly provided that Defendant assigned and warranted title of the car. Because Defendant expressly warranted title, the provision disclaiming liability for consequential damages is not effective as to consequential damages for breach of the warranty of title.

■ ¶ 16 With regard to the amount of damages, Defendant also argues the jury determined its verdict under the influence of passion or prejudice. To support this argument, Defendant points to two notes that the jury sent to the judge during deliberations. The first note asked:

> Can we award money to plaintiff and also instruct [Defendant] to provide valid title with EPA, DOT, & Customs paperwork?

The trial court answered this question by advising the jury that its verdict was "limited to the instructions as given to you." The second note asked:

> If we award dollar figure to plaintiff, does he pay his attorney out of that? or can we ask [Defendant] to pay plaintiff's attorney & court fees over damages?

The trial court answered this question by advising the jury that "attorney fees are not your concern."

¶ 17 We find the trial court's responses to the jury's questions adequately dealt with their concerns. We must presume that the jury followed the trial court's directions and considered the evidence in light of the instructions. *Bateman v. Glenn,* 1969 OK 158, ¶ 14, 459 P.2d 854, 858. Defendant has not met its burden of clearly showing prejudice that would warrant a finding the jury verdict was excessive. *See Clark v. Bearden,* 1995 OK 71, ¶ 11, 903 P.2d 309, 313.

■ ¶ 18 Finally, Defendant argues the jury disregarded the instructions in that it did not find for Defendant on its defense of "special circumstances."[3] However, in its motion for new trial, Defendant did not refer to either the issue of "special circumstances" or "accommodation party." Defendant mere-

---

3. Defendant's argument is based on 12A O.S. 1991 § 2–312, which provides as follows:

 (1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
 (a) the title conveyed shall be good, and its transfer rightful. . . .
 (2) A warranty under subsection (1) will be excluded or modified only by specific language

or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

The trial court instructed the jury consistent with this section.

ly alleged that "[t]he verdict was contrary to law in that the verdict was rendered in disregard of the instructions given." This allegation is too general to preserve Defendant's argument regarding the defense of special circumstances.[4] *See generally Federal Corp.*, 1978 OK CIV APP 55, 606 P.2d 1141 (approved for publication by order of the Oklahoma Supreme Court); *Horizons, Inc.*, 1984 OK 24, 681 P.2d 757.

¶ 19 The jury's verdict is supported by competent evidence, both as to liability and damages. Furthermore, the verdict does not appear to have been actuated by passion or prejudice. Therefore, the trial court did not abuse its discretion or act arbitrarily or contrary to law in denying Defendant's motion for new trial or for remittitur.

## THE ADEQUACY OF THE JURY INSTRUCTIONS

¶ 20 Defendant next argues the trial court erred in instructing the jury and in refusing to grant a new trial on that basis. "[T]he standard of review for jury instructions given or refused is whether a probability exists that jurors were misled, thereby reaching a different conclusion than they would have reached but for questioned instruction(s)." *Cimarron Feeders, Inc. v. Tri–County Elec. Coop., Inc.*, 1991 OK 104, ¶ 5, 818 P.2d 901, 902. We must consider "the accuracy of the statement of law, the applicability of the instructions to. the issues when the instructions are considered as a whole, and above all, whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction." *Id.* at ¶ 6, 818 P.2d at 902; *see also Mosley v. Truckstops Corp. of America*, 1993 OK 79, ¶ 9, 891 P.2d 577, 581.

¶ 21 Defendant first attacks instruction number 13, which instructed the jury as follows:

If you cannot decide the intention of the parties after considering the prior instructions, then you should interpret the unclear terms of the express written warranty most strongly against the party responsible for the uncertainty.

As Defendant correctly points out, the written warranty language was contained on the reverse side of the certificate of title and, thus, was not drafted by either party. Defendant argues this instruction, at best, confused the jury. However, where a jury instruction is obviously not applicable, it must be presumed the jury recognized the instruction as inapplicable and reached its verdict unaffected by the instruction. *Federer v. Davis*, 1967 OK 208, ¶ 10, 434 P.2d 197, 200. Furthermore, Defendant has not argued or shown a probability that the jury was misled and reached a different conclusion due to the inapplicable instruction.

¶ 22 Defendant next attacks instruction number 14[5] as being unnecessary and confusing in view of the more specific instructions regarding warranties. However, Defendant, again, has not argued or shown a probability that the jury' was misled and reached a different conclusion due to the inapplicable instruction.

¶ 23 Finally, Defendant attacks instruction number 15, which instructed the jury as follows:

If you decide for [Plaintiff] on his claim for breach of warranty of title or express written warranty, you must then fix the amount of his damages. This is the amount of money that is needed to put him in as good a position as he would have been if the warranty of title had not been breached.

---

4. We also agree with Plaintiff that there is sufficient evidence in the record—the general circumstances surrounding the transaction; the title which shows Defendant receiving title from Belauste and transferring it to Plaintiff; and Plaintiff's testimony that Defendant treated Plaintiff as a regular customer—to raise a question of fact as to Defendant's status in the transaction. Thus, the trial court correctly submitted the issue to the jury and' we must presume that the jury listened to the evidence and made its decision based on that evidence. *See McCoy v. Oklahoma Farm Bur. Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568.

5. Instruction number 14 instructed the jury as follows:

A warranty of title and an express warranty is breached or broken when a party does not do what it promised to do in the express written warranty.

This instruction is a modified version of Oklahoma Uniform Jury Instruction (OUJI) 23.51. Defendant criticizes this instruction on the ground that it does not comport with the Notes on Use for OUJI 23.51. The Notes on Use state that the instruction should be given if there is a jury question concerning the amount of damages. The Notes on Use further state that, in the last sentence of the instruction, "the trial judge will need to tell the jury how to calculate damages for the particular type of contract that is involved in the case." Although the trial court in the instant case did not technically comply with the directions in the Notes on Use, it separately instructed the jury in instruction number 17 on the proper method of calculating Plaintiff's damages. We find that, when read together, as the jury was instructed to do, the instructions fairly and accurately instructed the jury as to the method of calculating damages. *See In re T.R.W.*, 1985 OK 99, ¶ 27, 722 P.2d 1197, 1202 (jury instructions are to be viewed as a whole, not separately); *Juvenal v. Okeene Pub. Sch.*, 1994 OK 83, ¶ 26, 878 P.2d at 1026–1032 (where instructions fairly and accurately stated the applicable law, technical error in not giving OUJI instruction was harmless).

 ¶ 24 Defendant also criticizes instruction number 15 as conflicting with instruction number 17. The two instructions do not conflict. The method included in instruction 17 does no more than put Plaintiff "in as good a position as he would have been if the warranty of title had not been breached," as stated by instruction 15. Furthermore, even if the two instructions did conflict, jurors are "credited with certain powers of perception and understanding" and are presumed to recognize inconsistencies in the instructions. *See Lee v. Darden*, 1966 OK 220, ¶ 22, 421 P.2d 845, 849; *In re T.R.W.*, 1985 OK 99, ¶ 27, 722 P.2d 1197, 1203.

¶ 25 Defendant has failed to show that any perceived errors in the instructions, either singly or cumulatively, probably misled the jury and caused it to reach a different conclusion than it would have reached but for the questioned instructions. *See Cimarron Feeders*, 1991 OK 104, ¶ 5, 818 P.2d at 902.

## PLAINTIFF'S ENTITLEMENT TO ATTORNEY FEES

 ¶ 26 The trial court awarded Plaintiff attorney fees and costs pursuant to 12 O.S.1991 § 939, which allows an award of attorney fees to the prevailing party "[i]n any civil action brought to recover damages for *breach of an express warranty* or to enforce the terms of an express warranty made under Section 2–313 of Title 12A of the Oklahoma Statutes...." (Emphasis added.) Defendant expressly warranted title to Plaintiff. Thus, Plaintiff is entitled to attorney fees under § 939.[6]

¶ 27 Defendant argues that § 939 does not apply to the instant case because Plaintiff's claim was based on breach of the implied warranty of good title found in 12A O.S.1991 § 2–312, which is not specifically included in the language of § 939. Plaintiff's claim was also based on the written warranty of title included on the back of the Oklahoma Certificate of Title.[7] Therefore, we reject Defendant's argument.

## CONCLUSION

¶ 28 The trial court did not abuse its discretion in denying Defendant's motion for new trial or for remittitur, because the jury's verdict is supported by the evidence and the instructions did not mislead the jury. Furthermore, the trial court did not err in awarding attorney fees to Plaintiff.

¶ 29 AFFIRMED.

¶ 30 COLBERT, J., concurs, and RAPP, P.J., dissents.

RAPP, P.J., dissenting.

¶ 1 It would appear Defendant was Plaintiff's agent and, at best, an accommodation party or strawman between two of its employees—both car salesmen familiar with the business of buying and selling vehicles—to enable Plaintiff's agent to obtain cheaper financing in the purchase of an automobile from the employee originally owning the ve-

---

6. Defendant does not challenge the amount of the award.

7. Plaintiff specifically stated in the pretrial order that its claim was based on "12A O.S. § 2–312, *written warranty* and Common Law." (Emphasis added.)

hicle. This case verifies the old saying that no good deed goes unpunished. As a car salesman, Plaintiff was knowledgeable of the intricacies of buying and selling vehicles and, here, used the Defendant employer as a foil with deep pockets to cover his own negligence in failing to investigate or discover any title defects and failing to mitigate damages. He asserted Defendant made a profit and that this profit then raised a question of fact as to its status, forgetting that an agent is allowed a profit for its activities.

¶ 2 I would hold the jury disregarded its instructions under Defendant's defense of special circumstances. The damages awarded are ridiculous and appear to be given as a prejudicial bias against car dealers. I would also hold that under *State ex rel. Jones v. Baggett*, 1999 OK 68, ¶ 12, n. 5, 990 P.2d 235, 240, n. 5, Defendant's allegation of irregularity in its motion for new trial was sufficient to inform Plaintiff, the trial court, and this Court of its defense. Thus, I would hold the trial court erred in denying the motion for new trial.