**In the Matter of S.T.G., an Alleged Deprived Child.**

**K.G., Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. 75840.**

Supreme Court of Oklahoma.

Feb. 19, 1991.

William R. McKinney, Asst. Public Defender, Oklahoma City, for Child.

Gary A. Taylor, Steven A. Novick, Legal Aid of Western Oklahoma, Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty., Stephen L. Sullins, Asst. Dist. Atty., Oklahoma City, for appellee, State of Okl.

ALMA WILSON, Justice:

The resolution of this appeal depends upon the construction of one word in 10 O.S.Supp.1990, § 1130(A)(5)(a). At issue is the definition of the term "abuse" in a statute permitting the immediate termination of parental rights where the child involved has been adjudicated deprived.

S.T.G. came to the attention of child welfare authorities on January 7, 1990, after the Department of Human Services received a referral alleging that he was malnourished. The next day DHS intake workers visited the mother's home, a motel, where they observed and substantiated the child's poor condition. The child was taken to Oklahoma Children's Memorial Hospital in Oklahoma City for treatment. The hospital staff determined that he was severely malnourished, dehydrated and clearly failing to thrive. He was placed in temporary care of the DHS. After being placed in a foster home, S.T.G. began to gain weight and began to develop normally.

A hearing was held in May to determine whether or not the child was deprived and whether the mother's parental rights should be terminated. At the hearing testimony and evidence concerning the child's history and that of the mother were presented. S.T.G. was born January 22, 1989, and weighed eight pounds and six ounces at birth. Within a few days of his birth he was taken into foster care until April of that year. At the time he left his foster home he weighed over fourteen pounds and appeared to be healthy. When treated at the hospital in January of 1990, at which time he was almost a year old, he weighed eleven pounds and seven ounces. His stomach area protruded and his legs were thin with the flesh hanging from them. After being given a bottle of an electrolyte solution containing water, salts and sugar, the child was still dehydrated. His lips were cracked and he had so little moisture in his body that he was unable to cry tears. After he was given a bottle of formula he took it so quickly that the doctors were afraid he would vomit. When he had completely finished the bottle he continued to suck on it and held it so tightly that his knuckles turned white.

The hearing further revealed that the mother was a paranoid schizophrenic who suffered from hallucinations and delusional thinking including that the child was talking to her and expressing his desire to read and go to school. The testimony of the mother revealed that she did not believe that there was anything wrong with her son when he was taken away from her and that he was in fact overweight. A psychiatrist testified that she had observed visits between the mother and child. The mother's behavior was inappropriate. She treated him like a child much older than his chronological age. The psychiatrist testified that the mother suffered from paranoid schizophrenia, a disease she had been treated for since her teenage years and one which does not improve without treatment. The appellant had not followed the psychiatrist's recommendations concerning treatment. The psychiatrist further testified that the disease was a life-long problem and that the appellant was not capable of

providing emotional nurturance or the necessary physical care that her son needed.

A psychologist testified that S.T.G. is extremely developmentally delayed and now at risk of being mentally retarded due to malnourishment. When she observed the mother and child together she stated that the visits were dysfunctional and chaotic with little parent-child attachment. S.T.G.'s current foster mother testified that as of May 25, 1990, he weighed thirty pounds and had grown three inches. The jury found that the child was deprived. In the second portion of the bifurcated hearing, the jury found that the rights of the mother should be terminated. On the verdict form of the termination hearing, the jury answered "yes" to the question, "Did you find the abuse and neglect heinous and shocking?" They also answered "yes" to the second question, "Did you find that termination of the mother's parental rights is in the best interest of the child?"

■ Although not questioning the finding that the child was deprived, the appellant's brief argues that there is no statute authorizing termination of parental rights for "abuse and neglect". The brief states that the mother was not responsible for her behavior and could not have intentionally abused her son. Additionally it argues that the portion of 10 O.S.Supp.1990, § 1130 which could be construed to allow termination for neglect requires a three month period for the parent to be allowed to correct the problem. 10 O.S.Supp.1990, § 1130(A)(2). The portion of the statute providing for immediate termination, subsection 5, does not provide for immediate termination subsequent to a determination of deprived unless the child is physically or sexually abused in a manner which is heinous or shocking. Subsection 5 does not mention neglect. The appellant concludes that the jury was misled by the instructions of the court and by the jury form into believing that the mother's parental rights could be terminated for heinous and shocking neglect.

The termination statute provides:

A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:

\* \* \* \* \* \*

5. A conviction in a criminal action pursuant to the provisions of Sections 843, 845, 1021.3, 1111 and 1123 of Title 21 of the Oklahoma Statutes or a finding in a deprived child action either that:

    a. the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court or that the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse....

10 O.S.Supp.1990, § 1130(A)(5)(a), 1987 Okla.Sess.Laws, ch. 95, § 1.

In contrast with this subsection is subsection A(3). Under subsection A(3) parental rights may be terminated if a child is found to be deprived, the condition is caused by or contributed to by acts or omissions of the parent, the termination of those rights is in the best interest of the child, and the parent has failed within three months to correct the condition. The appellant states that subsection A(5) allows no opportunity for judicial notification of norms of conduct and a period of time to conform before rights are severed. She concludes that subsection A(5) contemplates termination in extremely egregious circumstances where parents are deemed to know their conduct may result in forfeiture of all their rights. She reasons that if knowledge of a wrongful act were necessary, use of the term "neglect" in the instructions to the jury was improper and the inclusion of the term in the instructions was reversible error. The appellant argues for judicial notice of the behavior she must correct and opportunity to conform her conduct to the court-prescribed norms.

To support her argument the appellant attempts to draw parallels between the juvenile code and the criminal law. We agree that the relationship of parents to their children is a fundamental right with

constitutional protection, and there are similarities between criminal cases and parental termination cases such as right to notice that counsel will be provided to those who cannot afford counsel. *Matter of Chad S.,* 580 P.2d 983, 985 (Okla.1978). Nevertheless, parental termination cases and criminal cases are not the same. She cites *Atterberry v. State,* 731 P.2d 420 (Okla.Cr. 1986), where a conviction was reversed in a case of child abuse because under the trial court's instruction the definition of child abuse was too broad. The appellant contends that because a fundamental right is involved, we should also construe the term "abuse" narrowly and reverse the judgment of the trial court which terminated her parental rights. Even *Atterberry* recognized the difference between the criminal law and juvenile law in the definition of "abuse and neglect" given in 21 O.S.1981, § 845. This statute, which is part of our Criminal Code, defines·"abuse and neglect" for the purpose of the reporting act which requires physicians to report instances of child abuse or neglect to the proper authorities. The Court of Criminal Appeals held that the phrase "child abuse or neglect" is given a much broader definition in § 845 than used in § 843 entitled "Abuse of children—Penalty". The court stated that the reason the definition was broader in § 845 was because the required reports were used for both criminal and civil purposes. *Atterberry* has no application to the case at bar.

Our cases have established that the purpose of termination is to protect children from harm suffered by reason of either neglect or the intentional actions of their parents. We have held that in case of involuntary termination the fundamental integrity of the family unit is subject to intrusion and dismemberment by the State only where a "compelling" State interest arises and protecting the child from harm is the requisite State interest. *Matter of Sherol A.S.,* 581 P.2d 884, 888 (Okla.1978). Unlike the criminal statutes there is no *mens rea* requirement in the definition of abuse in 10 O.S.Supp.1990, § 1130. Parental intent is irrelevant to the suffering inflicted upon the child when that child is starved or tortured. A parent will not be given a second opportunity to seriously abuse a child. *Matter of R.J.W.,* 789 P.2d 233, 234 (Okla.1990).

■ Starvation is serious abuse endangering the life of the child. Starvation of an infant is an act which is heinous and shocking. Because this Court has defined "neglect" as the disregard of duty owing to indifference or willfulness, *Matter of Betty C.,* 632 P.2d 412, 414 (Okla.1981), we find little purpose in differentiating between these two terms for the construction of 10 O.S.Supp.1990, § 1130(A)(5). The important consideration is that the harm to the child is "heinous or shocking" or "severe" as the statute provides. There is no question that in the case at bar the abuse or neglect to S.T.G. was heinous, shocking and severe. The responsibility of this Court in protecting a child's life will not hinge upon semantical exercises and definitions taken out of context.

■ The appellant separately argues that the trial court erred in failing to appoint counsel on appeal for her. A hearing was held on June 19, 1990, at which time the trial court denied the mother "further appointment of Mr. John Bowley, her trial attorney, to perfect her appeal." The order on which the above language appeared was preprinted, with that phrase hand written in space provided at the end of the order. A box was also checked next to a sentence which ordered "that the appeal for the indigent be perfected by the appellate public defender's office." The order made the finding that the court did not have the authority under the statutes to appoint appellate counsel other than the appellate public defender's office. The appellant's brief correctly observes that the Public Defender was representing the child and continues to do so on appeal. She argues that it would be a conflict of interest for the appellate division to represent the mother because the interests of the child and the mother are adverse.

The appellant began the appeal pro se. At some point Legal Aid of Western Oklahoma began to represent her. Its name is

listed on the trial briefs for the appellant. By its appearance on her behalf, Legal Aid of Western Oklahoma has protected her fundamental right to representation of counsel. *Matter of Chad S.*, 580 P.2d 983 (Okla.1978). The Court of Appeals addressed this issue of appellate representation of indigents in *Matter of D.D.F. and S.D.F.*, 784 P.2d 89 (Okla.App.1989), where the court held that given the fundamental rights involved in a termination proceeding, and the public policy reflected by state statutes and court decisions, the right to counsel must be extended to court appointed counsel on appeal. As stated in that opinion, 20 O.S.1981, § 1304 authorizes claims against the court fund for attorney's fees for indigents in the trial court and on appeal. We find that reasoning persuasive. However, because the appellant was ably represented on appeal, she was not prejudiced by the error of the trial court.

Finding no reversible error, the judgment of the trial court is AFFIRMED.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE and KAUGER, JJ., concur.

SIMMS, J., specially concurs.

SUMMERS, J., concurs in part, dissents in part.

OPALA, C.J., dissents.

SIMMS, Justice, specially concurring:

I agree with the majority that because of the serious threat to this infant's life caused by his mother's neglect of his basic needs, it was not reversible error to bring this termination proceeding under 10 O.S. Supp.1990, § 1130(A)(5) seeking immediate termination, rather than under § 1130(A)(3) which provides a three month grace period to parents. Any concerns that § 1130(A)(5) would not apply here because this child is suffering from severe harm from heinous and shocking neglect rather than from heinous and shocking abuse are put to rest by the fact that in this situation adjudication of the child as deprived is a prerequisite to termination of parental rights under both § 1130(A)(5) and § 1130(A)(3). The definition of a deprived child set forth in 10 O.S.1990, § 1101, is, in pertinent part:

". . . . a child who is for any reason destitute, homeless, or abandoned or who does not have the proper parental care or guardianship or whose home is an unfit place for the child by reason of neglect, cruelty, or depravity on the part of his parents, legal guardian, or other person in his care the child may be . . ."

The proven harm to this child's health caused by the mother's passive but severe neglect comes within the reach of § 1130(A)(5) just as surely as if it had been caused by active abuse.

Additionally, it should be noted that 21 O.S.1981, § 845, discussed by the majority opinion provides in pertinent part:

"'Abuse and neglect', as used herein, means harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare. Harm or threatened harm to a child's health or welfare can occur through: Non-accidental physical or mental injury; . . . or negligent treatment or maltreatment, including the failure to provide adequate food, clothing, or shelter."

The majority is correct that within the framework of this case any attempt to establish a substantial distinction between abuse and neglect is not persuasive.

I am authorized to state that Justice DOOLIN and Justice KAUGER join with me in the views expressed above.