907 P.2d 241 (1995)
In the Matter of C.C., S.C., and R.C., Minor Children Adjudged to Be Deprived.
The STATE of Oklahoma, and C.C., S.C. and R.C., Minor Children, Appellees,
v.
Rick CHRISTENSEN and Patti Christensen, Appellants.
No. 83730.
Court of Appeals of Oklahoma, Division No. 4.
October 17, 1995.
*242 John Priddy, Assistant District Attorney, Tulsa, for Appellee State of Oklahoma.
Julie K. McMahon, Assistant Public Defender, Tulsa, for Children.
Randy A. Rankin, Tulsa, for Appellant Rick Christensen.
*243 John David Echols, Bryan Lester Dupler, and Cliff A. Stark, Tulsa, for Appellant Patti Christensen.
Released for Publication by Order of the Court of Appeals of Oklahoma Division No. 4.
RAPP, Vice Chief Judge.
Defendants, Rick and Patti Christensen, appeal a judgment on a jury verdict adjudicating their children, C.C., S.C., and R.C., to be deprived and terminating their parental rights. Patti Christensen is the natural mother of all three children. Rick Christensen is the natural father of only R.C., an infant.
The incident stems from a charge made by C.C., alleging that she suffered sexual abuse at the hands of Rick Christensen. On one occasion in which C.C. had been "touched the night before," she decided to run away from home. The next morning, C.C. stole her mother's Transfund card and withdrew $500. She then unsuccessfully attempted to purchase a one-way ticket to Texas. Finally, she tried to commit suicide by taking a large dose of pills. After C.C. was hospitalized, she testified to a social worker that her stepfather had sexually abused her. Subsequently, the state brought charges against both parents and initiated deprived/termination proceedings.
During the state's case in chief and out of the presence of the jury, Rick made an oral motion in limine to prevent the state from calling him to the stand. His counsel notified the court that he would assert his fifth amendment privilege against self-incrimination and argued that having him invoke his privilege in front of the jury would be prejudicial. After hearing arguments of counsel, the court overruled Rick's motion and the state was allowed to call him as a witness. He did in fact plead the fifth when asked by the district attorney whether he had sexually abused C.C.
On appeal, Rick alleges that prejudicial error occurred when the state summoned him to the stand and questioned him, knowing that he would invoke the privilege against self-incrimination before the jury. In addition, he alleges that the prosecution's comment on his refusal to testify or on his exercising his privilege in a criminal case is a violation of the fifth amendment's privilege against self-incrimination.
The mother also appeals, alleging that the evidence was insufficient as a matter of law to support the jury's verdict of termination as to R.C. and S.C. She also alleges that the deprivation of Rick's fifth amendment privilege rendered her case fundamentally unfair. She further alleges the statutory scheme of 10 O.S.Supp. 1994, § 1130, violates due process because it does not afford the opportunity to render verdicts as to each child individually. She also alleges she did not have effective assistance of counsel.
With respect to the first issue, the constitutional guarantee against self-incrimination, insofar as it affords the right to refuse to be sworn, is confined to the person accused in a criminal matter. In civil cases, the privilege against self-incrimination is not infringed upon by merely being called as a witness and compelled to take the oath. See Oklahoma Dept. of Public Safety v. Robinson, 512 P.2d 128, 133 (Okla. 1973). In this regard, the Robinson court stated, "The privilege cannot be invoked to excuse the witness from appearing and taking the stand. The privilege of a witness not to incriminate himself is an option of refusal and not a prohibition of inquiry." Id. (citations omitted).
The U.S. Supreme Court has held that the constitutional guarantee allows a witness not to answer questions put to him in any proceeding, civil or criminal, where the answers might incriminate him in future criminal proceedings. Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). However, the privilege against being involuntarily called to the stand as a witness against oneself applies only in criminal cases. See Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Also, in Allen v. Illinois, 478 U.S. 364, 369, 106 S.Ct. 2988, 2992, 92 L.Ed.2d 296 (1986), the Supreme Court held that the criminal law standard of the privilege against self-incrimination was not available in sexually-dangerous person proceedings because they are "essentially civil in nature." If the proceedings are not "criminal," a witness cannot refuse to be sworn even if he intends to invoke the privilege. The right to rely on the privilege is not *244 violated by being called to the stand and taking the oath.
In Oklahoma, in earlier rulings, juvenile proceedings were considered to be neither civil nor criminal in nature, but special proceedings, "partaking of the elements of civil and criminal procedures." Stratton v. Steele, 519 P.2d 468, 471 (Okla. 1974). More recent law clearly draws a distinction between deprived/parental termination cases and criminal cases as shown by In re S.T.G., 806 P.2d 636, 638-9 (Okla. 1991) (citation omitted), where the supreme court stated:
We agree that the relationship of parents to their children is a fundamental right with constitutional protection, and there are similarities between criminal cases and parental termination cases ... Nevertheless, parental termination cases and criminal cases are not the same.
It is therefore clear, since this is not a criminal proceeding, that the summoning of Rick to the stand to invoke his privilege against self-incrimination did not violate his constitutional rights.
With regard to the allegation that comment by the prosecution on defendant's refusal to testify is a violation of the fifth amendment's privilege against self-incrimination, Rick cites Kaneshiro v. Belisario, 51 Haw. 649, 466 P.2d 452, 455 (1970). In Kaneshiro, the court held that a defendant's assertion of the privilege against self-incrimination in a paternity proceeding is protected by the state and federal constitutions and may not be the subject of any comment or adverse inference by the opposing party.
A later decision by the same court, however, held the opposing view that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment `does not preclude the inference where the privilege is claimed by a party to a civil case.' 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)." Ramil v. Keller, 68 Haw. 608, 726 P.2d 254, 262 (1986) (quoting Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976)). Kaneshiro is further distinguished because it was not a deprived/termination proceeding.
Moreover, "[f]ailure of a party who is present at the trial to answer questions based on the privilege against self-incrimination raises a strong inference that the answers would have been unfavorable and damaging to him, and comment to that effect is proper." Asplin v. Mueller, 687 P.2d 1329 (Colo.Ct.App. 1984).
Thus, the state's comment on Rick's silence did not render the proceeding unfair or deprive him of his constitutional rights.
Regarding mother's allegation that the evidence was insufficient to support the jury's verdict of termination as to R.C. and S.C., where there is any competent evidence reasonably tending to support a verdict, this court will not disturb the verdict and judgment based thereon. Doyle v. Kelly, 801 P.2d 717, 719 (Okla. 1990).
The state's ability to terminate parental rights in this case is based upon 10 O.S.Supp. 1994, § 1130(A)(6)(a), which allows termination if "the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking."
In the present case, there was sufficient testimony that C.C. had been sexually abused. She was first abused by her father and then by Rick. In both cases, the mother either refused to accept C.C.'s allegations or simply ignored them. There was additional evidence that Rick had sexually abused C.C. back in June 1992. The jury, after carefully weighing the evidence, much of it based upon the testimony of the mother and state witnesses, concluded that the parents' parental rights should be terminated. There was competent evidence to support the jury's verdict and it will therefore not be disturbed on appeal.
Lastly, regarding mother's allegations that 10 O.S.Supp. 1994, § 1130, violates due process and that she had ineffective assistance of counsel, mother failed to raise either issue at trial. These issues will therefore not be considered on appeal. Nu-Pro, *245 Inc. v. G.L. Bartlett & Co., Inc., 575 P.2d 618, 619 (Okla. 1977). Also, mother offers no evidence as to how counsel failed to provide adequate representation. She merely conjectures that the termination proceeding itself reflects a lack of care for the child's interests by counsel. The U.S. Supreme Court has stated that the court is to presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674 (1984). Also, mother has the burden to show that prejudicial error occurred as a result of counsel's error. Mother wholly failed to satisfy this standard.
AFFIRMED.
GOODMAN, P.J., and STUBBLEFIELD, J., concur.