1998 OK CIV APP 96

In the Matter of L.C. and P.C., alleged deprived children,

Margo P. CHERNEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. 90559.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 2, 1998.

David L. Morris, Ada, for Appellant.

William N. Peterson, District Attorney, and Chris L. Ross, Assistant District Attorney, Ada, for Appellee.

## MEMORANDUM OPINION

ADAMS, Judge.

¶ 1 Appellant Margo P. Cherney (Mother) appeals a trial court order determining that L.C. and P.C. are deprived children and terminating her parental rights to the minor children. The parental rights of Scott Cherney (Father) were also terminated in the order, but he is not a party to this appeal.

¶ 2 The facts are summarized as follows: On information supplied by friends of parents' neighbor suspecting L.C. had been sexually abused, the Department of Human Services (DHS) removed L.C. and her brother, P.C., from their parents' home. The State of Oklahoma (State) investigated the matter and filed a petition alleging, *inter alia,* that the children were deprived by reason of the sexual abuse of L.C. by Father. Thereafter, State amended the petition to include an

allegation that Mother had failed to protect L.C. from the abuse and moved for immediate termination of the parental rights of Mother and Father because the sexual abuse was heinous and shocking.

¶ 3 After a two day hearing, the trial court filed an order simultaneously adjudicating L.C. and P.C. to be deprived children based on numerous findings and terminating the parental rights of Father and Mother to both children pursuant to 10 O.S.Supp.1995 § 7006–1.1(A)(6)(a).[1] The latter action was based on the trial court's specific findings that the sexual abuse by Father was "heinous and shocking," that Mother had failed to protect L.C. from such abuse, and that P.C. was L.C.'s sibling.

¶ 4 For reversal, Mother argues that State failed to prove, by clear and convincing evidence, that (1) both children were deprived as defined by Oklahoma law and that (2) she failed to protect her children. In addition, Mother argues two procedural errors by the trial court entitle her to a new trial: (1) failing to apply the Rules of Civil Procedure; and (2) allowing the admission of State's exhibits and the testimony of numerous witnesses.[2] We begin our review with the procedural errors.

## PROCEDURAL ERRORS

¶ 5 Mother contends the trial court should have granted her request for a formal pretrial conference and scheduling order. According to Mother, the absence of these procedures resulted in a denial of due process. According to Mother, deprived child/parental termination actions are civil in nature, and therefore, the statutes and rules governing civil procedure, including those relating to pre-trials, scheduling orders and discovery must apply. Mother cites no au-

thority holding these types of proceedings are civil proceedings. However, the Court in *Stratton v. Steele,* 1974 OK 10, ¶ 12, 519 P.2d 468, 471, held that "actions under the Dependent, Delinquent and Neglected Children's Act are in the nature of *special proceedings,* partaking of the elements of civil and criminal procedures ... and we do not believe that it was intended that the strict rules of pleading and practice should obtain to same." (Emphasis added). *See also In the Matter of C.C.,* 1995 OK CIV APP 127, 907 P.2d 241.

¶ 6 Moreover, Mother admits in her brief that "most of the requested information was supplied by [State] shortly after the October 31st deadline. This delay was due to an illness in the family of the Ass't District Attorney, and was certainly acceptable." Thereafter, Mother fails to specify the information she claims she did not receive. Mother has not demonstrated any error of law or how the trial court's denial of her motion resulted in prejudice.

¶ 7 In addition, Mother contends her constitutional and due process rights were violated when the trial court granted State's *ex parte* Motion to Endorse Additional Witnesses filed on November 4, 1997, after imposing an October 31, 1997 deadline for State to provide the parties with a list of trial witnesses and a list of exhibits, and then allowed the admission of those exhibits and the testimony of those witnesses at trial.

¶ 8 However, Mother did not object to the testimony of the witnesses at trial and has waived any error in this regard. *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, 786 P.2d 1230; *In the Matter of C.A.R.,* 1994 OK CIV APP 124, 882 P.2d 582. Mother did object to the admission of one exhibit, a report prepared by one of the witnesses endorsed after the trial court's deadline.

---

**1.** According to this section, parental rights may be terminated upon a finding in a deprived child action that "the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court or that the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse." Formerly, 10 O.S.Supp.1994 § 1130(A)(5)(a).

**2.** In a similar vein, Mother argues in Proposition I of her brief that the trial court erred in "overruling [her] motion to dismiss the petition to terminate parental rights," contending that State did not comply with various procedural statutes relating to the filing of its petition to terminate Mother's rights. Because we reverse the termination order, we need not address those alleged errors.

However, her objection was based upon hearsay, an argument she does not repeat on appeal as to that exhibit. Mother never objected to the exhibit based on the belated endorsment of the witness who prepared it. She cannot complain about the admission of evidence to which she lodged no specific objection on the ground she argues on appeal. 12 O.S.1991 § 2104(A)(1).

¶9 Mother also complains her rights were violated because (1) the trial court improperly allowed the child to be examined by State's medical expert without following the correct procedure, (2) a DHS employee allegedly asked two individuals to search her home to collect evidence, and (3) State witnesses allegedly violated the rule of sequestration. However, Mother never objected to the doctor's testimony or to the testimony of the witnesses allegedly violating the rule of sequestration. Moreover, there is nothing in the record to indicate that any evidence was obtained in the "search" about which Mother complains. Mother has not demonstrated how any of these alleged violations of her rights prejudiced her ability to receive a fair trial.

¶10 Finally, Mother argues that the trial court improperly admitted statements by the child made to State's medical expert and to another witness. Mother never objected to the admission of the child's statement made to the medical expert and therefore may not obtain reversal on that basis. Mother did object to the statement made to the other witness, but the statement only tended to prove that the child had been sexually abused. This fact was never in dispute, and the error, if any, in admitting that statement was harmless.

### ADJUDICATION OF L.C. AND P.C. TO BE DEPRIVED

¶11 The trial court found that L.C. and P.C. were deprived because "they do not have proper parental care *and* their home is an unfit place for the children by reason of neglect, abuse, cruelty, *and* depravity on the part of the children's parents." (Emphasis added). This decision was based on the following findings: (1) L.C. had been sexually abused by Father; (2) L.C. and P.C. had been subjected to drug and alcohol abuse by both parents in the home; (3) parents had permitted L.C. and P.C. to be cared for extensively by neighbors who used drugs in the children's presence and who bathed L.C. often and may also have sexually abused her; (4) parents failed to provide adequate care for P.C., causing him to be in a failure to thrive condition; and (5) parents failed to provide an adequate home environment for L.C. and P.C.

¶12 Mother correctly points out that State had the burden to prove by clear and convincing evidence that both children are deprived. *In the Matter of J.M.,* 1993 OK CIV APP 121, 858 P.2d 118. For reversal, she argues that State failed to carry this burden, claiming that every one of State's witnesses, excluding their employees, testified that she was a good mother, capable of taking care of her two children, and that no one had ever seen her do anything to harm her children. She further argues that, at the very best, State's witnesses indicated that the two minor children were "sometimes dirty."

¶13 Considering the term "deprived child," as provided by 10 O.S.Supp.1997 § 7001–1.3(10)(a)(2), means a child "who does not have the proper parental care or guardianship *or* whose home is an unfit place for the child by reason of neglect, abuse, cruelty, *or* depravity on the part of the child's parents," (emphasis added), we must disagree with Mother's characterization of the evidence. Mother's argument fails to consider: (1) the evidence that Father sexually abused L.C. was undisputed; (2) her own testimony concerning Father's drug and alcohol abuse and her abuse of methamphetamine ten months before the children were removed from the home; (3) the testimony of numerous witnesses that L.C. was frequently dirty; and (4) the testimony that P.C.'s failure to thrive condition was caused by a lack of calories and social stimulation. The record contains evidence from which the factfinder could reasonably conclude that there was clear and convincing evidence not only that L.C. and P.C. did not have "proper parental care," but also that their "home was an unfit

place for the children by reason of neglect and abuse on the part of the children's parents." Accordingly, we affirm the part of the trial court order adjudicating both L.C. and P.C. to be deprived.

### IMMEDIATE TERMINATION OF MOTHER'S PARENTAL RIGHTS PURSUANT TO § 7006–1.1(A)(6)(a)

¶ 14 Once the trier of fact determines that a child is deprived by reason of physical or sexual abuse, § 7006–1.1(A)(6)(a) authorizes immediate termination of parental rights only if the abuse is heinous and shocking. *In the Matter of S.T.G.*, 1991 OK 11, 806 P.2d 636; *In the Matter of D.D.F.*, 1990 OK 89, 801 P.2d 703. Terminations based on heinous and shocking abuse must be proven by clear and convincing evidence. *In the Matter of D.D.F.*, 1990 OK 89, 801 P.2d 703; *In the Matter of the T.R.W.*, 1985 OK 99, 722 P.2d 1197. In this case, State's ability to immediately terminate Mother's parental rights also required clear and convincing evidence that she "failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court."

¶ 15 Mother does not question the trial court's finding that the sexual abuse of L.C. by father was heinous and shocking. Her argument for reversal is that State did not prove by clear and convincing evidence that she failed to protect L.C. from such abuse, *i.e.*, that she knew or should have known that L.C. was being sexually molested. We agree and reverse.

¶ 16 On research reveals only five cases addressing immediate termination of parental rights pursuant to the 1983–1994 versions of § 7006–1.1(A)(6)(a), which, except for the renumbering, are substantively identical. The two cases cited by State are of little assistance because they involve fact situations in which the parent being immediately terminated actually committed the physical or sexual abuse. *See In the Matter of S.T.G.*, 1991 OK 11, 806 P.2d 636; *In the Matter of D.D.F.*, 1990 OK 89, 801 P.2d 703. Of the remaining three cases, *In the Matter of the T.R.W.*, 1985 OK 99, 722 P.2d 1197, address-

es a parent's "failure to protect" most directly.

¶ 17 In *T.R.W.*, State sought to have a child adjudged deprived as to his father and to terminate the father's parental rights on the ground that father had known of the abuse by the child's stepmother and had failed to protect his son. After the jury found the child was deprived and the father's parental rights to that child were terminated, the father appealed, arguing first that the evidence presented in the deprived action failed to establish that he had "actual knowledge" of the abuse of the child. Before concluding that the evidence was sufficient to support the jury verdict, the trial court's rulings on the father's demurrer to the evidence and his motion for directed verdict, the Court in *T.R.W.*, 1985 OK 99, ¶ 16, 722 P.2d at 1201, considered that:

> The State's evidence, on the other hand, sought to establish that both hospitalizations of [child] had been the result of child abuse and that appellant father had notice that the first incident was the result of actions by [child's] stepmother. The State also presented evidence that between the first and second incidents [child] had exhibited fear of his stepmother which was noticeable to third parties. *Most importantly, expert witnesses testifying for the State testified that upon the May 7th admission [child] was substantially covered with bruises ranging in age from two to five days, that this bruising was of such a nature as to classify [child] as a battered child, and that this bruising should have been readily apparent to one observing [child].* (Emphasis added).

¶ 18 In response to the father's argument that the evidence did not rise to the level of "clear and convincing" required to effect a termination of his parental rights, the Court, 1985 OK 99, ¶ 30, 722 P.2d at 1203, further concluded that:

> we have examined the evidence before the trial court and have determined that the evidence supports the jury verdict in the deprived action. That review has also established that the evidence presented rises to the level of clearly and convincingly supporting a finding that abuse of a hei-

nous and shocking nature was inflicted on appellant's son *and that the nature of this abuse was such that appellant had notice of its infliction and failed to protect his son.* (Emphasis added).

¶ 19 Other cases similarly contain evidence from which the fact finder could reasonably find clear and convincing evidence of the non-abusing parent's notice of the abuse and failure to take steps to prevent it. *See In the Matter of C.C.*, 1995 OK CIV APP 127, 907 P.2d 241 (termination of the mother's parental rights affirmed; mother either refused to accept or simply ignored her child's allegations of sexual abuse by her father and a third person); *In the Matter of W.H.*, 1994 OK CIV APP 38, 872 P.2d 409 (father's parental rights to his daughter terminated by trial court for failure to protect his daughter's half-sister; evidence showed child, who had just been returned to mother's custody 18 days earlier, was victim of battered child syndrome, died from severe blow to head, and had multiple bruises of varying ages on body).

¶ 20 Based upon our review of the record in this case, the evidence, viewed in the light most favorable to State, does not support a reasonable fact finder in concluding that clear and convincing evidence shows "the nature of this abuse was such that Mother had notice of its infliction and failed to protect her daughter." Unlike the bruising in *T.R.W.* or *W.H.* and the ignored verbal accusations in *C.C.*, there is no evidence that Mother had notice of the sexual abuse inflicted upon L.C. by Father on or about July 14, 1997, the resulting injuries from which caused the friends of parents' neighbor to become suspicious.

¶ 21 There is no evidence Mother had an *opportunity to notice any of the physical* conditions resulting from that abuse. In fact, the friends testified that Father had taken L.C. over to the neighbor's house the evening the friends took her to their house to play with another child, where the friends changed L.C.'s diaper about an hour or so later and noticed the condition that caused them to ultimately call DHS. One of the friends recalled Father saying, as he was coming in the neighbor's back door that evening, that Mother and P.C. "had been gone to the store for a couple of hours." The friends further testified that L.C. stayed at their home about four hours that evening, but there is nothing in the record establishing where and to whom L.C. was ultimately returned. This is particularly important because State's expert witness testified that the physical conditions observed when L.C.'s diaper was changed can heal within hours and could be attributed to other causes.

¶ 22 State contends that Mother's statements written down *after* the removal of the minor children concerning her recollections of L.C.'s change in behavior, along with other things she saw and heard, "were clearly sufficient for her to know or suspect that her child was being abused." We must disagree. This kind of retrospective awareness is not the type of notice required by *T.R.W.*, and which justifies immediate termination of parental rights for "failure to protect" a child from heinous and shocking physical or sexual abuse. Furthermore, even State's own expert witness testified that L.C.'s behavior was not specific to sexual abuse, although consistent with it.

¶ 23 Based on the record before us, we must reverse that part of the trial court order terminating Mother's parental rights. However, we affirm that part of the order adjudicating L.C. and P.C. to be deprived and remand the case for further proceedings as required by law, including an appropriate dispositional hearing and disposition order. AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

HANSEN, J., and BUETTNER, P.J., concur.