2000 OK 82

**In the Matter of A.M. and R.W., Children under 18 years of age.**

**State of Oklahoma, Petitioner/Appellee,**

v.

**Patrice Walker, Respondent/Appellant.**

**No. 93,899.**

Supreme Court of Oklahoma.

Oct. 24, 2000.

Richard Couch, Tulsa, OK, court-appointed counsel for appellant.

Tim Harris, Tulsa County District Attorney, Yvonne Fisher Glick, Assistant District Attorney, Tulsa, OK, for appellee.

Julie K. McMahon, Assistant Public Defender, Tulsa, Oklahoma, for the children.

BOUDREAU, Justice:

¶ 1 Today we are asked to determine whether a mother's procedural due process rights were violated when the trial court excluded her from the courtroom while her seven year-old son testified in a proceeding

to terminate her parental rights. We hold that under the circumstances of this case, the mother's procedural due process rights were not violated.

## I.

## FACTS

¶ 2 The State of Oklahoma (State) filed a petition alleging R.W. (son) and A.M. (daughter) to be deprived children as to their natural mother Patrice Walker (mother). The State also sought immediate termination of the mother's parental rights to both children.[1] The State alleged the mother had physically abused her son by beating him with an extension cord and that the physical abuse was heinous and shocking.

¶ 3 About two weeks before trial the State and the children's attorney filed a joint motion to exclude the mother from the courtroom when her son testified.[2] The mother did not file an objection to the motion and the trial court did not rule on the motion prior to trial. The issue did not arise again until the morning of the second day of trial. Just before the son was to testify, the State and the children's attorney again moved, this time orally, that the mother be excluded from the courtroom during the son's testimony.[3] The State pointed out that the son had recently testified against his mother, in her presence, during the criminal proceeding which arose out of the same conduct that led to the termination proceeding.[4] The experience caused the son to exhibit major behavioral problems and as a result he had to be moved to yet another therapeutic foster home. He had finally begun to "calm down,"

but as the time for him to testify again drew nearer, he began to exhibit the same behavioral problems as before.

¶ 4 The mother objected, arguing she had an absolute right to be present during her son's testimony and that the State had not demonstrated harm to the child or an inability to testify. In response the children's attorney acknowledged that the son might be physically able to complete his testimony, even with his mother in the courtroom, but pointed out that the harm to him would be his increased emotional problems afterwards—similar to the emotional problems he experienced after he testified in the criminal proceeding.

¶ 5 The trial court found the best interest of the son outweighed the mother's right to be present in the courtroom. After the mother left the courtroom and the jury entered, the mother's attorney asked the trial court to explain her absence to the jury, which the trial court did.[5] The son then testified and was cross-examined by his mother's attorney. After the son left the courtroom, his mother returned for the rest of the proceedings. The trial ended that day. The jury found both children to be deprived and found the mother's parental rights should be terminated as to both children. The trial court entered judgment on the verdict. The mother appealed.

## II.

## STANDARD OF REVIEW

¶ 6 In passing upon a claim that the procedure used in a proceeding to terminate

---

1. Neither the parental rights of R.W.'s natural father nor the parental rights of A.M.'s natural father were at issue in the trial court and neither of the two men is involved in this appeal.

2. Oklahoma statutes authorize the trial court under certain circumstances to order the testimony of a child to be taken by closed circuit television or by video deposition, 10 O.S.1991, § 7003–4.3(B), (C), or "as otherwise authorized by law for the protection of child witnesses." 10 O.S. 1991, § 7003–4.1(B).

3. The daughter did not testify.

4. The mother was charged with and pled guilty to the crime of injury to a minor child. She was sentenced to prison for three years.

5. The mother's attorney: "Judge, before you begin the testimony of the child I think it would be appropriate to inform the jury that my client, at the request of the State and the child's attorney, has been excluded from this portion of the proceeding." The trial court responded: "I will. Before you came into the courtroom we discussed for a few moments, and I ruled that the natural mother would remain outside while he's testifying, that's the reason that she is not here at this point was because of my ruling to—that she remain outside while he testifies on this."

parental rights resulted in a denial of procedural due process, we review the issue *de novo*. *See In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984); *In re Ruth Anne E.*, 126 N.M. 670, 974 P.2d 164, 169 (N.M.Ct.App.1999); *In re Christopher D.*, 191 Wis.2d 680, 530 N.W.2d 34, 42 (1995) (whether procedural due process rights were violated is a question of constitutional fact which is reviewed *de novo* ); *see generally* Steven Alan Childress & Martha S. Davis, *Federal Standards of Review* § 17.05, at 17–21 (2d ed. 1992) ("[P]rocedure is probably always a pure question of law...."). *De novo* review requires an independent, non-deferential reexamination of another tribunal's legal rulings. *Neil Acquisition, L.L.C., v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, 1103 fn. 1.

### III.

### ANALYSIS

█ ¶ 7 In determining whether an individual has been denied procedural due process we engage in a two-step inquiry, asking whether the individual possessed a protected interest to which due process protection applies and if so, whether the individual was afforded an appropriate level of process. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); U.S. Const. amend. XIV, § 1; Okla. Const., art. 2, § 7.[6]

█ ¶ 8 In the context of a proceeding to terminate parental rights, the answer to the first inquiry is clear. Parents have a constitutionally protected liberty interest in the continuity of the legal bond with their children. *In re Delaney*, 1980 OK 140, 617 P.2d 886, 890; *In re Christina T.*, 1979 OK 9, 590 P.2d 189. "The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied to child deprivation hearings." *In re Chad*, 1978 OK 94, 580 P.2d 983, 985.

█ ¶ 9 The answer to the second inquiry, however, must be determined on a case-by-case basis because the due process clause does not by itself mandate any particular form of procedure. It calls for such procedural protection as the particular situation demands. *McLin v. Trimble*, 1990 OK 74, 795 P.2d 1035, 1040 (citing *Mathews v. Eldridge*, 424 U.S. 319, 322, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In the context of a proceeding to terminate parental rights, the essence of procedural due process is a "meaningful and fair opportunity to defend." *In re Rich*, 1979 OK 173, 604 P.2d 1248.[7] This includes a reasonable opportunity to confront and cross-examine witnesses. *State ex rel. Children, Youth and Families Dept. v. In re Ruth Anne E.*, 126 N.M. 670, 974 P.2d 164 (N.M.Ct.App.1999) (quoting *In re L.V.*, 240 Neb. 404, 482 N.W.2d 250, 257 (Neb. 1992)).

¶ 10 In addressing whether the mother was afforded an appropriate level of process, we are guided by the seminal case of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews* the United States Supreme Court held that in considering what process is due in a given situation, three factors must be assessed. First, a court must consider the private interest that will be affected by the state's action. Second, the court must consider the risk of erroneous deprivation posed by the procedures employed and the probable value, if any, that additional or substitute procedures would provide. Lastly, the court must consider the governmental interest at stake, including any administrative and fiscal burdens

---

6. Both the United States Constitution and the Oklahoma Constitution provide that no person shall be deprived of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; Okla. Const., art. 2, § 7.

7. In *In re Rich*, we said the Sixth Amendment to the United States Constitution is not implicated in a parental rights termination proceeding because the confrontation clause of the Sixth Amendment applies only to criminal cases. *Id.* at 1253; *see also In re S.T.G.*, 1991 OK 11, 806 P.2d 636, 638 (OK 1991) (while there are similarities between criminal cases and parental termination cases ... "they are not the same"). In *In re Rich* we also rejected the argument that an incarcerated parent has an absolute right to attend a parental rights termination hearing. We held an incarcerated parent is entitled to a "fair and meaningful opportunity to defend in a family-status suit" but that the parent's physical presence was not the only means of affording him that right. *In re Rich*, 604 P.2d at 1253.

that alternate procedures would generate. *Id.* at 334–35, 96 S.Ct. 893.

¶ 11 In the context of a proceeding to terminate parental rights, the private interest-the parent's interest in continuing the family bond with the child-is of utmost importance. *In re Chad,* 1978 OK 94, 580 P.2d 983; *Lassiter v. Dept. of Soc. Serv.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The State's interest in the welfare of its children, including protecting them from trauma, is also of utmost importance. *In re S.T.G.,* 1991 OK 11, 806 P.2d 636; *Santosky v. Kramer,* 455 U.S. 745, 766, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Since the private interest and the governmental interest are strong countervailing interests, we direct our focus to the procedure employed by the trial court to determine whether the procedure posed a risk of an erroneous deprivation of the mother's rights.

¶ 12 The procedure employed by the judge in this termination proceeding was to exclude the mother from courtroom during her son's testimony. The mother's absence from the courtroom deprived her of the opportunity to hear her son's testimony and also deprived her of the opportunity to confer with her attorney prior to cross-examination of the child.

¶ 13 In evaluating whether this procedure created a risk of an erroneous deprivation of the mother's rights under the facts and circumstances of this case, we look to the purpose of confrontation and cross-examination. The purpose is to ensure the integrity of the fact-finding process by "subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). It is evident that any restriction a judge places on the opportunity for face-to-face confrontation and cross-examination of adverse witnesses enhances the risk of an erroneous deprivation of parental rights.

¶ 14 However, in termination of parental rights cases, several courts have said that procedural due process does not entitle a parent to personally confront and cross-examine a child witness if the child would be traumatized by the experience. *In re Adoption of J.S.P.L.,* 532 N.W.2d 653, 660 (N.D. 1995) (citing *In re Elizabeth T.,* 9 Cal. App.4th 636, 12 Cal.Rptr.2d 10, 13 (1992); *In re Brock,* 442 Mich. 101, 499 N.W.2d 752 (1993); *In re Michael C.,* 557 A.2d 1219, 1220 (R.I.1989)). We agree with the rationale of these courts. If the state is able to make an appropriate showing in a termination case, then a parent's face-to-face confrontation is not required. The necessary showing would require the state to demonstrate at a hearing that the presence of the parent in the courtroom would cause the child significant emotional harm. Further, when a court excludes a parent from the courtroom during a child's testimony, the court should consider alternative procedures to ensure the efficacy of the parent's cross-examination of the child. In most instances this would involve, at a minimum, that the court provide the excluded parent adequate time to consult with his or her attorney after the child's direct testimony and before the commencement of the child's cross-examination.

¶ 15 Although the trial court in this case failed to adopt alternative procedures to ensure the efficacy of cross-examination, we perceive little risk under the facts of this case that the mother's exclusion led to an erroneous decision. The mother had recently engaged in face-to-face confrontation and cross-examination of her son in the criminal proceeding that arose out of the same conduct that is the subject of this case. At the criminal hearing she was represented by the same attorney who defended her in the termination proceeding. Having recently confronted her son in the criminal courtroom, it is far from certain whether a second face-to-face confrontation would have aided in the truth-seeking goal of cross-examination. Moreover, the record on appeal reveals the mother did not request an opportunity to confer with her attorney prior to the beginning of the child's cross-examination. Finally, in her arguments on appeal, the mother does not suggest that her absence from the courtroom hampered the effectiveness of the child's cross-examination or that her son's testimony was untruthful or incomplete in any way. In short, the mother failed to show

that her exclusion from the courtroom impaired her ability to defend the termination case.

## IV.

## CONCLUSION

¶ 16 The essence of procedural due process in the context of a proceeding to terminate parental rights is a fair opportunity to be heard and to present a defense. This includes a reasonable opportunity to confront and cross-examine witnesses. What constitutes a reasonable opportunity depends on the facts of each case.

¶ 17 While procedural due process does not always require face-to-face confrontation in a termination proceeding, a parent should not be excluded from the courtroom absent a showing at a hearing that the child would suffer significant emotional harm caused by the parent's presence. In addition, the trial court should normally adopt alternative procedures to ensure the efficacy of the absent parent's cross-examination of the child.

¶ 18 Although no special procedures were adopted in this case, we conclude that under the unique circumstances of this case, it is highly unlikely the exclusion of the mother during her son's testimony led to an erroneous decision to terminate her parental rights.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS, DIVISION 3, VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.

¶ 19 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, WATT, and WINCHESTER, JJ., concur; OPALA, J., concurs in judgment.